IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    *Plaintiff,*

                                        CIV NO. 04-750 JP/WPS

    v.

$2,192.00 IN U.S. CURRENCY,

    *Defendant,*

SANDRA BEARD,

    *Claimant.*

## REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The United States submits the following Requested Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

    1.    On December 31, 2001, members of the Albuquerque Drug Enforcement Administration (DEA) Interdiction Unit reviewed passenger name records for east-bound Amtrak Train #4 from Los Angeles, CA to Chicago, Il.

    2.    The passenger records revealed that Shirley Williams and Sandra Beard were traveling on the train one way from Los Angeles to Chicago. Their tickets had been purchased with $569.60 in cash on December 27, 2003. Williams and Beard were in room #13 of sleeper car #430. Agents knew that drug couriers commonly purchase one way tickets with cash.

    3.    The train arrived in Albuquerque on December 31, 2003 at approximately 11:45 a.m. When the interdiction team arrived, passengers had already exited the sleeper car.

    4.    Williams and Beard were standing on the cement platform outside of the sleeper

cars when Task Force Officer (TFO) Lucero contacted them.  Officer Lucero requested and received permission to speak with them.

     5.     TFO Lucero asked to examine their train tickets.  Williams and Beard voluntarily went to room #13 and retrieved two train ticket stubs.  TFO Lucero also requested and received permission to see photo identification.  Williams and Beard provided California driver's licenses.  TFO Lucero examined both the ticket stubs and driver's licenses and returned the items to Williams and Beard.

     6.     TFO Lucero asked if they had any luggage and explained his duties as an interdiction officer.  TFO Lucero informed Williams and Beard that he was talking to them due to the way they had purchased their ticket.

     7.     TFO Lucero requested and received permission to search Williams' and Beard's luggage.  A search of luggage Williams and Beard had placed in the common luggage area revealed no contraband.

     8.     A search of a black tote bag in room #13 revealed three bundles of cocaine wrapped inside a brown Nike sweat jacket.  A black suitcase belonging to Beard contained Nike sweat pants matching the Nike jacket.  The cocaine weighted approximately three kilograms.

     9.     Beard and Williams were transported to the Albuquerque DEA office.

     10.     TFO Will Dorian advised Beard of her <u>Miranda</u> rights.  Beard waived her rights and agreed to speak with TFO Dorian and Special Agent Jeff Himes.

     11.     Beard stated as follows:  The cocaine had been fronted to her and was to be delivered to Kentucky to an unknown person for $22,000 per kilogram.  Beard was to return the money to Riverside, CA.  She and Williams were to receive $2,000 each for delivering the

cocaine and returning the money. It was the third time she had transported narcotics.

12. Special Agent Mark Hyland discovered the $2,192 in United States currency in Beard's jacket pocket and Louis Vuitton wallet. The wallet also contained seven credit cards. The $2,192 in currency consisted of the following denominations: 2-$1.00, 8-$20.00, 21-$100.00.

13. Beard was using the currency to pay for travel/expenses.

14. On April 6, 2004, Beard entered a plea of guilty to conspiracy to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 846. On June 29, 2004, United States District Judge Bruce D. Black, District of New Mexico, sentenced Beard to 37 months imprisonment followed by three years of supervised release.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

2. This forfeiture action is governed by 21 U.S.C. § 881(a)(6), which provides in pertinent part that the following is subject to forfeiture to the United States:

All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter [the Controlled Substances Act].

3. This case is also governed by 18 U.S.C. § 983, enacted as part of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA).

4. The United States' burden of proof is to establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1); <u>United States v. Lot Number 1 at Lavaland Annex</u>, 256 F.3d 949, 956 (10th Cir. 2001). The Court examines the aggregate of the facts to determine whether the United States has met its burden. See <u>United States v. $149,442.43</u>, 965 F.2d 868, 875-876 (10th Cir 1992). The United States is not required to link property derived from a criminal offense to a specific transaction. <u>Id.</u>

5. The claimant bears the burden of proving that the claimant is an innocent owner of the property by the preponderance of the evidence. 18 U.S.C. § 983(d)(1). To meet this burden, claimant must prove that she is an owner and (i) did not know the conduct giving rise to forfeiture; and (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonable could be expected under the circumstances to terminate such use of the property. 18 U.S.C. § 983(d)(2)(A).

6. The United States has established by a preponderance of the evidence that the currency constituted illegal drug proceeds and was used or intended to be used to facilitate a violation of the Controlled Substances Act. The pertinent facts are:

    a. Beard and Williams were transporting three kilograms of cocaine from Los Angeles to Kentucky with the intent to distribute the cocaine.

    b. Beard and Williams' train tickets had been purchased with $569.60 in cash four days before the train departed.

    c. There is no evidence that Beard used her credit cards to finance the drug distribution trip.

    d. Beard had made two previous trips to transport cocaine.

    e.  The currency in Beard's possession facilitated her travel.  The sole purpose of her travel was delivery of cocaine in Kentucky.

    f.  The currency in Beard's possession constituted the proceeds of illegal drug trafficking.

See United States v. $30,670 in U.S. Funds, 2002 WL 31093587 (N.D.Ill. 2002) (dog sniff, purchase of one-way ticket with cash, quantity of currency concealed in woman's girdle on courier's person, and implausible story satisfied preponderance of the evidence standard); United States v. $22,991.00, More or Less, in U.S. Currency, 227 F.Supp.2d 1220 (S.D. Ala. 2002) (dog sniff, quantity of currency, history as drug user/dealer, and presence of drugs in car sufficient to establish forfeitability by preponderance of the evidence); United States v. $345,510.00 in U.S. Currency, 2002 WL 22040 (D. Minn. 2002) (following United States v. $141,770.00, 157 F.3d 600 (8th Cir. 1998): positive dog alert to suitcase in baggage compartment of Amtrak train, odor of marijuana, quantity of currency and packaging in plastic and paper bags, and inconsistent story sufficient to establish forfeitability by preponderance of the evidence); United States v. $118,170.00 in U.S. Currency, 69 Fed. Appx. 714, 2003 WL 2165445 (6th Cir. 2003) (presence of small amount of marijuana, dog alert, quantity of currency, evidence of involvement in prior drug deal, and tax returns showing lack of legitimate income was sufficient to establish forfeitability of currency by preponderance of the evidence); United States v. $99,990 in U.S. Currency, 69 Fed. Appx. 757, 2003 WL 21698849 (6th Cir. 2003) (large amount of currency, manner of packaging, false statements, dog sniff, evasive driving, and 10-year-old marijuana conviction established forfeitability of sei+zed currency by preponderance of the evidence).  See also United States v. $242,484 in U.S. Currency, 389 F.3d 1149 (11th Cir. 2004) (en banc)

(quantity and packaging of cash, travel to and from source city, dog sniff, courier's inability to identify person from whom she received cash or to provide receipts, improbable and inconsistent story, and true owner's failure to file a claim were sufficient to establish probable cause.)

7. Even if the Court assumes the currency was from a legitimate source, Beard was using the currency to facilitate her travel. The sole purpose of her travel was to distribute three kilograms of cocaine. See United States v. U.S. Currency in the Amount of $40,000, 1999 WL 1011938 (E.D.N.Y. 1999) (under section 881(a)(6), whether claimant actually derived cash from gambling winnings is irrelevant; if he intended to exchange it for a controlled substance, legitimate source does not matter).

8. Claimant Beard has failed to establish an innocent owner defense to forfeiture by a preponderance of the evidence.

9. Claimant Beard has failed to establish a legitimate source of the currency by a preponderance of the evidence. Implausible explanation of a legitimate source is not sufficient. See United States v. $149,442.43, 965 F.2d 868, 875-76 (10th Cir. 1992); United States v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d 1123, 1129 (11th Cir. 1996).

10. Based upon the above findings and conclusions of law, the defendant $2,129.00 in U.S. currency will be forfeited to the United States and all right, title, and interest in the property vested in the United States. An appropriate Judgment and Order of Forfeiture will be entered.

Respectfully Submitted,

DAVID C. IGLESIAS
United States Attorney


*<u>Electronically filed on December 2, 2005</u>*
STEPHEN R. KOTZ
Assistant United States Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274


I HEREBY CERTIFY that a true
copy of the foregoing document
was mailed to:

**Sandra Beard**,
c/o Ms. Jean Beard
1820 Gurnee Ave.
Anniston, AL 36201,
on 2nd  day of December, 2005
/s/
STEPHEN R. KOTZ
Assistant U.S. Attorney